ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CRISTOBAL V. VANTERPOOL,

Plaintiff,

. vs.

CITY OF NEW YORK, ALBERT BLACKMAN
(a/k/a "Albert Blackma"), NYPD OFFICER
"JOHN" FRAGEDIS, Shield #2140, NYPD
DEPUTY INSPECTOR KENNETH C. LEHR,
67th Precinct, Brooklyn, NY, NYC CORPORATION
COUNSELOR MICHAEL A. CARDOZO,

Defendant,

--------------------------------------------------------X

CV 12 - 2961

CIVIL RIGHTS SUIT--JURY TRIAL
DEMANDED--*"JIM CROW LAWS"*

BRODIE, J.

GOLD, M.J.

RECEIVED
JUN 1 1 2012
PRO SE OFFICE

Plaintiff(s), as and for this complaint against the defendants based upon personal knowledge,
alleges as follows:

## NATURE OF THE ACTION

1).That this is an action pursuant to 42 USC 1981,1982, 1983, 1985, 1988 the 1st, 4th, 5th and
14th Amendments to the States Constitution; Article 1, Section 6, 11 and 12th of the New York
State Constitution and related state claims for false arrest, malicious prosecution, abuse of
process, intentional infliction of emotional distress, negligence, conversion and plaintiff also
seeks equitable relief as stated herein below.

## JURISDICTION AND VENUE

2). This court has jurisdiction over the federal claims pursuant to 28 USC and 1331 and
1343(a)(4) and supplemental jurisdiction over the state claims pursuant 28 USC 1367(a). Venue
lies in this district pursuant 28 USC 1391(b) because the claims arose in this district.

### PARTIES

3). Plaintiff was and still is a resident of in the State of New York , County of Kings. Plaintiff's
address is 389 Jackson Street, Hempstead, NY, 11550.

4). Defendant **CITY OF NEW YORK** (i.e. the New York City Police Department) is a
municipal corporation and entity duly organized and existing by virtue of the laws of the State of
New York, and the New York City Corporation Counselors Offices, 100 Church Street , New
York City, 10007, NY, is its legal representative.

5). Defendant **ALBERT BLACKMAN (a/k/a "Albert Blackma")**, at all relevant times, was a land-
Owner and individual private person offering to the general public illegal residential tenancies

1

within untaxed, and unapproved basement, specifically at the address known as <u>384 East 31st.</u> <u>Street, Brooklyn, NY,</u> and resides upon the 1st floor of said premises.

6). Defendant Police Officer **JOHN" FRAGEDIS, Shield #2140**,at all relevant times, was a New York City Police Officer of the New City Police Department and an employee of the Defendant City of New York. This police officer, at all times relevant, was assigned to and which is believed to be located at 67th Precinct, 2820 Synder Avenue Brooklyn, NY. To understand the direct responsible supervisor over this Police Officer, it is to be noted well, the ranks of the NYPD are as follows:

- Police officer

- Detective

- Sergeant: 3 blue chevrons

- Lieutenant: 1 gold bar

- Captain: 2 gold bars

- Deputy Inspector: gold oak leaf

- Inspector: gold eagle

- Deputy Chief: 1 gold star

- Assistant Chief: 2 gold stars

- Bureau Chief: 3 gold stars

- Chief of Department: 4 gold stars

- Police Commissioner: 5 gold stars on the shield

Therefore, and since Plaintiff dose not have the actual names of supervisory police employees, where-Ever this Defendant name is alleged herein, it shall reasonably include the responsible supervisory Police personnel in the ranks alleged above, and the New York City Corporation Counselors Offices, 100 Church Street , New York City, 10007, NY, is his legal representative.

7). Defendant **DEPUTY INSPECTOR KENNETH C. LEHR,**,at all relevant times, was a New York City Police Officer of the New City Police Department and an employee of the Defendant City of New York. This police officer, at all times relevant, was assigned to and which is believed to be located at 67th Precinct, 2820 Synder Avenue Brooklyn, NY. The ranks detailed within paragraph 6, supra., and the Defendant's supervisors shall be the same described as within that paragraph, and the New York City Corporation Counselors Offices, 100 Church Street , New York City, 10007, NY, is his legal representative.

## FACTS

8). That within the year of 2011, Plaintiff and the Defendant **ALBERT BLACKMAN (a/k/a "Albert Blackma")** did enter into a residential housing lease whereby the Defendant would lease an apartment/room to the Plaintiff, and which was located in the basement area of the premisesat

2

384 East 31st Street, Brooklyn, NY.

9). That the defendant **ALBERT BLACKMAN (a/k/a "Albert Blackma")** always had superior knowledge of facts regarding the legality of this residence way above and beyond that knowledge of the Plaintiff. In fact Defendant named here actually knew the agreement was void from its inception due to hidden facts of the residence's illegality for type of tenancy sought by this Plaintiff.

10). That from March 1st 2011, and up to March 5th 2011 plaintiff became a victim of criminal, illegal and corrupt behavior committed by the Defendant **ALBERT BLACKMAN (a/k/a "Albert Blackma").** These unlawful acts included physical assaults, and other illegal conduct.

11). That ***Police Complaint # 2012-67-0199*** was generated with the 67th Police Precinct as a result of the Plaintiff's filing harassment and other offenses against the Defendant **ALBERT BLACKMAN (a/k/a "Albert Blackma")**Furthermore, a Landlord-Tenant Part proceeding was begun
between the Plaintiff and this same Defendant which resulted in a favorable ruling on behalf of the Plaintiff, and which allowed him to remain, until further proceedings, in the same tenancy.

12). That Defendant ALBERT BLACKMAN (a/k/a "Albert Blackma") sought out confederates, and accomplices, and found same in Defendant Police Officer **JOHN" FRAGEDIS, Shield #2140.** This association was to violate the order by the New York Civil Court, Landlord-Tenant Part through the deliberate, corrupt and criminal and illegal eviction, by armed potential deadly force, of the Plaintiff.

13). That within Kings County, Brooklyn, New York, non-Whites are routinely subjected to racial discrimination when reporting to New York City Police Department of incidents of crimes, or missing persons, and are usual victims of racial profiling by Police Personnel when either traversing the streets, or avenues. That this is well known to, sanctioned, approved, directed by, and the official ***"Jim Crow"*** policy and practice of the Defendants: **CITY OF NEW YORK, DEPUTY INSPECTOR KENNETH C. LEHR, and NYC CORPORATION COUNSELOR MICHAEL A. CARDOZO.**

14). That liken *uniform Klu Klux Klansmen* conducting a night-time raid upon an unarmed and non-criminal Black family household, the Defendants **ALBERT BLACKMAN (a/k/a "Albert Blackma"),** and Police Officer **JOHN" FRAGEDIS, Shield #2140,** on the day of May 19, 2012, approximately, and at night, did swoop down upon the Plaintiff's residence, and with force and while armed with firearms, and other weapons, and without court order, threw the Plaintiff out of his tenancy.

15). That the characteristics of the victim played a role in the commission of the illegal acts described, specifically, Plaintiff's race, color, national origin, ancestry, gender, religion, religious practice or sexual orientation. Additionally, crimes based on the victim's age, where the victim is 60 or older, and crimes based on a mental or physical disability that substantially limits a major life activity are considered hate crimes.

16).That to cover-up these criminal illegal and corrupt conduct, and association by the Defendants, It was their intention and to which was acted out later, that false criminal charges of , among other things, attempted assault, possession of a machete, be filed against the Plaintiff. Shocking to the conscience, the law, makes the acts stated above a crime:

**Title 42, U.S.C., Section 3631**
**Criminal Interference with Right to Fair Housing**

This statute makes it unlawful for any individual(s), *by the use of force or threatened use of force, to injure, intimidate, or interfere with* (or attempt to injure, intimidate, or interfere with), *any person's housing rights because of that person's race, color, religion, sex, handicap, familial status or national origin.* Among those housing rights enumerated in the statute are:

The sale, purchase, or renting of a dwelling;

the occupation of a dwelling;

the financing of a dwelling;

contracting or negotiating for any of the rights enumerated above.

applying for or participating in any service, organization, or facility relating to the sale or rental of dwellings. This statute also makes it unlawful by the use of force or threatened use of force, to injure, intimidate, or interfere with any person who is assisting an individual or class of persons in the exercise of their housing rights. Punishment varies from a fine of up to $1,000 or imprisonment of up to one year, or both, and if bodily injury results, shall be fined up to $10,000 or imprisoned up to ten years, or both, and if death results, shall be subject to imprisonment for any term of years or for life.

17). That Plaintiff did not commit any act of provocation or was any reasonable and lawful facts for Defendants to rationalized these acts described throughout this complaint. That there exist a clear duty; in accordance with the NYC Charter, Chapter 18, Section 435(a), on the police force in New York City to, inter alia, protect property and rights of person.

18). That it is unbelievable that Defendants **CITY OF NEW YORK, DEPUTY INSPECTOR KENNETH C. LEHR,** and **NYC CORPORATION COUNSELOR MICHAEL A. CARDOZO.** and Police Officer **JOHN" FRAGEDIS, Shield #2140** were unfamiliar with laws prohibiting such atrocities upon New York citizens. Furthermore, these Defendants were well aware of repeated instances of racial and Hate Crimes committed by the personnel of the New York City Police Department from hundreds of prior lawsuits, and even Federal Criminal Prosecutions involving City Police Officer over the past twenty years, including but not limited to Abner Louima's brutal plunger attack, the recent rape of a male train passenger and sexual assaults of a woman inside her apartment committed, and each time by cops of the new York City Police department. The supervisors, and the New York City Attorney defendants named herein orchestrated, were the architects, planners, and supporters of brutal and racist "Jim Crow" policies and practices aimed at non-White citizens of New York City.

19). At no time described hereinabove did the police officer hereto act in a manner so as to seek the ends of justice, or to fulfill the officer's own oath of office, and being compliance with the New York City Police Department manual, but upon *"Jim Crow laws"* which prevents non-White from standing, walking or traveling the public thoroughfares, and Right to be Let Alone on equal terms as White People are afforded.

20) That in the New York City Police Department and among the defendants hereto there is a unwritten policy and practice called the *"Jim Crow laws"* whereby persons of such races of

4

African-American and Hispanic-Americans are deliberately targeted for ticketing, arrest, detention, searches, destruction of personal property.

21). At no time described herein above did the victim commit any act of provocation so as to justify or warrant the behavior by the defendant police officer. That enforcement of *"Jim Crow Laws"* and  robbery (NYS Penal Law, 160.05, et.seq) and larceny (NYS Penal Law, 155.30, subd..5, et.seq.), plus official misconduct (**NYS Penal Law, 195.00**) was the true reason behind the aforementioned behavior of the named police officer(s) and to cover-up same with the assistance of the remaining defendants.

## CLAIMS

## AS AND FOR A FIRST CAUSE OF ACTION FOR FALSE ARREST AS AGAINST ALL DEFENDANTS.

22). Plaintiff repeats, reiterates and realigns each and every allegation contained in paragraphs 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

23). At all relevant times, the defendant police officer and an employee of the City of New York, acted under color of laws and within the scope of the duties as employee, agents and official of the defendant City of New York .

24). Upon information and belief and at all relevant time herein, the defendant City of New York employed the particular police officer identified hereinabove.

25). At all relevant times herein, on the date of , the defendant police officer caused plaintiff to be arrested by an agent, employee and/or servant of the defendant City of New York .

26). That the aforementioned arrest and subsequent detention were without probable cause or any justification and was further based upon defendant's false statements, falsified reports, falsified documents, falsified evidence and perjured testimony.

27). There was no warrant issued for the arrest of the plaintiff which occurred on the date aforementioned..

28) .The arrest of the plaintiff by the defendant police officer was without probable cause and without reasonable grounds for the police officer hereto to believe that plaintiff had committed a violation, offense or even a criminal act; the police officer defendant further knew that he/she was without probable cause to arrest plaintiff, and this defendant intentionally made false statements, committed perjury, falsified reports, falsified official documents and falsified evidence to effect the false and unlawful arrest of the plaintiff.

29). As a result of the police officer-defendant's unlawful, malicious and false arrest of the plaintiff , this defendant placed this plaintiff under arrest, deprived plaintiff of his liberty without due process of law and confined and incarcerated the plaintiff against the person's will.

30). That at all times herein mentioned, defendant City of New York was and is vicariously liable for the false arrest of the particular plaintiff by its employee police officer under the doctrine of respondent superior.

31). That as a result of the false arrest which the plaintiff suffered, the particular plaintiff was incarcerated for approximately within the location described herein above, plaintiff since suffers

from recurring and terrifying memories, nightmares, dreams, difficulty in concentrating , irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety, plaintiff's earning power was impaired, and large sums of money were expended by plaintiff in the defense of the offenses charged.

32). That by reason of the foregoing intentional, concerted, unlawful, malicious, reckless and deliberately indifferent conduct and false arrest, the plaintiff is entitled to recover compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against all defendants, and punitive damages and/or exemplary damages as a matter of law in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) and, if applicable, attorney's fees as against the individual defendant police officer, and his civilian co-defendant.

## AS AND FOR A SECOND CAUSE OF ACTION FOR FALSE IMPRISONMENT AS AGAINST ALL DEFENDANTS.

33). Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

34). That subsequent to the false arrest, plaintiff was held in custody, incarcerated and detained as fully described in this complaint.

35). At all relevant times hereto, this particular plaintiff was conscious of his imprisonment, detention and confinement by the defendant police officer.

36), That at the aforementioned detention and incarceration was the result of a false and illegal imprisonment, which plaintiff was caused to suffer.

37). At all relevant times, the defendant police officer acted under color of law and within the scope of the duties as an employee, agent and official of the defendant City of New York .

38). That at all times herein mentioned, defendant City of New York was and is vicariously liable for the false imprisonment of the particular plaintiff by its employee police officer under the doctrine of respondent superior.

39). That as a result of the false imprisonment which the plaintiff suffered, plaintiff was imprisoned as described hereinabove, plaintiff since suffers from recurring terrifying memories, nightmares, dreams, difficulty in concentrating, irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety, and large sums of money were expended by plaintiff in the defense of the offenses as charged.

40). That by reason of the foregoing intentional concerted, unlawful, malicious, reckless and deliberate indifferent conduct and false imprisonment, plaintiff is entitled to recover damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against all defendants, and punitive and/exemplary damages as a matter of law in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) and, if applicable, attorney fees as against the individual defendant police officer.

## AS AND FOR A THIRD CAUSE OF ACTION FOR MALICIOUS PROSECUTION AS AGAINST ALL DEFENDANTS.

41). Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

42). That following the arrest and imprisonment of plaintiff, court proceedings were initiated

6

against the plaintiff by the defendants City of New York , and Police Officer. .

43). Approximately or soon thereafter, plaintiff appeared in a court of the City of New York for the County of Kings.

44). Defendant police officer testified and committed perjury either personally/absentia before the court of the City of New York aforementioned in the course and general scope of the police officer's employment duties and official duties with the defendant City of New York .

45). That the initiation of the aforesaid proceeding was a result of false statements, misrepresentations, perjured testimony, falsified reports, falsified official documents, falsified evidence, suppressed evidence and bad faith conduct of defendants City of New York and the police officer named hereinabove.

46). Thereafter a hearing/trial upon the offense was commenced against the plaintiff.

47). False statements, misrepresentations, perjured testimony, falsified reports, falsified official documents, falsified evidence, suppressed evidence and bad faith conduct by defendant City of New York and the police officer hereto were, in total or part, presented at the proceeding of this plaintiff.

48). On or about before a court of the City of New York as aforementioned, a hearing/trial verdict acquitted plaintiff of all of the charged offenses.

49). That there was insufficient and defective evidence and no probable cause upon which to commence the aforementioned prosecution.

50). Defendants City of New York and the particular police office named above had actual or apparent knowledge of facts strong enough to justify a reasonable person in the belief that there was an absence of lawful grounds for the prosecution of the plaintiff in the manner complained of.

51). Defendants City of New York and the officer named above knew of, or had reason to know that the plaintiff was not guilty of the offense as was charged.

52). That at the times of the aforementioned malicious prosecution, the defendant police officer was acting under color of law in the course and general scope of employment duties and official duties pursuant to the authority given by the defendant City of New York .

53). That at all times herein mentioned, defendant City of New York was and is vicariously liable for the malicious prosecution of the particular plaintiff caused by its employee police officer under the doctrine of respondent superior.

54). That as a result of the malicious prosecution to which the plaintiff was subject, plaintiff since suffers from recurring terrifying memories, nightmares, dreams, difficulty in concentrating, irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety, plaintiff was imprisoned as described hereinabove and large sums of money were expended by plaintiff in defense of the offenses charged.

55). That by reason of the foregoing intentional, concerted, unlawful, malicious, reckless and deliberately indifferent conduct and malicious prosecution, plaintiff is entitled to recover compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000.000.00) as against all defendants, and punitive and/or exemplary damages as a matter of law in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) and, if

7

applicable, attorney fees as against the individual defendant police officer, and civilian co-defendant.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS AGAINST ALL DEFENDANTS.

56). Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

57). That at all times herein mentioned, defendant City of New York, and the police officer hereto exhibited extreme, outrageous and reckless conduct by falsely arresting, imprisoning, detaining and incarcerating, plus maliciously prosecuting the plaintiff with the use of perjured testimony and/or false reports, falsified official documents, falsified evidence and bad conduct.

58). That the defendants City of New York and the police officer hereto intentionally inflicted and caused the plaintiff to suffer severe emotional distress and extreme mental anguish.

59). That the defendants hereto exhibited the above stated conduct with a blatant disregard of a substantial possibility of causing the plaintiff to suffer severe emotional distress and extreme mental anguish.

60). That at the time of the aforementioned conduct, defendant police officer was acting under color of law in the course and general scope of employment duties and official duties pursuant to the authority given the defendant City of New York .

61). That at all times herein mentioned, defendant City of New York was and is vicariously liable for the intentional infliction of emotional distress to plaintiff caused by its employee police officer under the doctrine respondent superior.


62). That as a result of the defendants' extreme, outrageous and reckless conduct to which the plaintiff was intentionally subjected, plaintiff's health was impaired and plaintiff was caused to suffer severe emotional distress and extreme mental anguish.

63). That by reason of the foregoing intentional, concerted, unlawful, malicious, reckless and deliberately indifferent conduct and intentional infliction of emotional distress, plaintiff is entitled to recover damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against all defendants, and punitive damages and/or exemplary damages as a matter of law in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) AND, if applicable, attorney fees as against the individual defendant police officer, and civilian co-defendant.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR ABUSE OF PROCESS AS AGAINST ALL DEFENDANTS.

64). Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

65). The arrest, detention, incarceration or imprisonment, including the prosecution of the plaintiff by the defendants City of New York and the particular police officer hereto was for reasons other than to legally prosecute the plaintiff and find the latter guilty of the alleged acts at the scene and by the Court aforementioned within paragraphs 1 through 22, supra.

66). That at time of the aforementioned abuse of process, the defendant police officer was acting under color of law in the course and general scope of employment duties and duties pursuant to the authority given by the defendant City of New York .

67). The arrest, and subsequent acts, including the prosecution of the plaintiff by defendant police officer and the City of New York was solely motivated to conceal criminal actions at the scene aforesaid; to avoid criminal prosecution and employment termination.

68). The arrest, imprisonment and later prosecution of the plaintiff was solely motivated to establish a cover-up of racism and corruption in an agency of the City of New York ; its great embarrassment and humiliation over the ticketing of Latinos or African-Americans and/or their white counter-parts for merely being in possession of alcoholic beverage advertisement such as labels and/or printed advertisement upon cans, bottles, or other vessels, and/or the unlawful, and illegal stop-frisk and searches/ destruction of civilian's personal property, plus physical evidence useful to persons of said races by the City of New York 's own police officers.

69). That by reason of the foregoing intentional, unlawful, malicious, reckless and deliberately indifferent conduct and abuse of process, plaintiff is entitled to recover compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000,00) as against all defendants, and punitive and/or exemplary damages as a matter of law in the sum THREE HUNDRED MILLION DOLLARS ($300,000,000.00) and, if applicable, attorney fees as against the individual defendant police officer, and civilian co-defendant.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR NEGLIGENCE AS AGAINST THE CITY OF NEW YORK .

70).Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraph 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

71). That the at the time of the aforementioned false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress and abuse of lawful process, all of the above-captioned defendants were acting under color of law in the course and general scope of their employment duties and official duties pursuant to the authority given by the City of New York .

72). That at the time of the aforementioned false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, the defendant City of New York , at all relevant times herein, should have known and reason or opportunity to know, that the specific agent, servant and/or employee named as defendant in this complaint was unfit for the employment for which the person was hired, unfit for the official duties delegated to said individual and unfit for the law enforcement and investigatory responsibilities to which same was assigned.

73). That the municipal defendant hereto was further negligent. In that, at no time, either prior to the police officer's employment, whereby it was foreseeable that defendant would be required to come into contact with the general public, did the municipal defendant ascertain whether this particular police officer was emotionally capable of performing the duties delegated. The defendant City of New York failed to administer to said police officer well known and standardized tests so as to ascertain said police officer's personality towards violence, racism, over-reacting, dishonesty, or incompetence in situation said police officer would likely to

encounter.

74). That the City of New York was further negligence. In that, during the employment of the defendant police officer hereto the defendant City of New York became aware, either constructively or from actual knowledge based upon prior complaints, of problems with this particular police officer that, clearly indicated unfitness, and the municipal defendant failed to take immediate and appropriate action such as investigation, reassignment, or discharge of the identified police officer.

75). That the City of New York defendant hereto was further negligent. In that, it, through its police commissioners, commanders, inspectors, lieutenants, sergeants and officers, routinely and regularly entrusted New York City property, such as, weapons, uniforms, shields, automobiles, handcuffs summonses, and vicinity to the defendant police officer. That by reason of and in consequence of this entrustment, injury was directly caused to the plaintiff.

76). That under the oath of office and the written rules and regulations promulgated by the New York City Police Department, inter alia, commonly called the **"Patrol Guide,"** or **"Department Manual,"** as published by the defendant City of New York , chemical evidence is supposed to be vouchered and forwarded to the laboratory of the City of New York by the defendant police officer.

77). That under the oath of office and the written rules and regulations promulgated by the New York City Police department, inter alia, commonly called the **"Patrol Guide,"** or **"Department Manual,"** as published by the defendant City of New York , line officers and command personnel have an affirmative duty to intercede and to prevent crimes and other misconduct committed by police officers and to report misconduct by police officers and to report such conduct whenever they become aware of it.

78). That under the **New York City Charter, Chapter 18, Section 435(a),** the City of New York 's police department and force must protect the property and rights of persons in the City of New York .

79). That the defendant City of New York , through its agents, servants and/or employees have neglected, failed or deliberately refused to so act as stated within paragraphs 77 through 78(a).

80). That the defendant City of New York , through its agents, servants, and/or employees has had notice, both constructively and actual, of routine abuses of citizens by police officers by both the Mollen Commission report issued in or around 1994 and by virtue of the report of Amnesty International issued in or around 1996, including complaints to NYC Public Advocate about the break-in-padlocking-ejectment on March 5th 1999 of Saint Ann 's Advocacy Program and William and Juana Bankhead from 1434 Putnam Avenue Brooklyn without any court order or justification up until March 10th 1999 when NYC Civil Court Judge Peter Wendt condemned said action of two white NYPD Officers of the 83rd Police Precinct and ordered the re-entry of the former tenants, plus NYC Police Department **Chief Kenny** of the 83rd Police Precinct and **Sgt. Scarpa** of the BNTF between 1999 and 2000 from Saint Ann 's Advocacy Program's William F. Bankhead .

81). That by the defendant City of New York 's failure, refusal or neglect to protect the rights of others, the municipal defendant either requested, engaged or condoned the behavior by the

named police officer hereto.

82). That by hiring, retaining, employing, failing to supervise, failing to screen, failing to test, failing to evaluate, failing to monitor, failing to manage failing to train and failing to investigate the aforementioned agent, servant and/or employee, defendant City of New York negligently created and caused a situation where it was likely that said agent, servant and/or employee would, as result of work history, unfit character, malicious temperament, racism, criminal propensity, inadequate training, inadequate management and inadequate supervision, unlawfully arrest, unlawfully imprison, unlawfully deprive innocent persons of Constitutional rights under the United States Constitution and the New York State Constitution, intentionally and wrongfully inflict emotional distress, intentionally and wrongfully abuse lawful process, commit innocent persons to be maliciously prosecuted, without sufficient reasons or probable cause appearing therefor.

83). That the City of New York knew or should have known in the exercise of due and reasonable care that the aforementioned police officer was malicious, racist, vicious, potentially dangerous, negligent and performing perjurious, criminal and illegal acts under the color of law during the course of employment duties.

84). That defendant City of New York was negligent in the hiring, employment, training, retention, management, supervision, screening, testing, evaluating, monitoring, and investigating of the aforementioned police officer.

85). That by reason of and in consequence of said negligence and lack of reasonable care on the part of the defendant City of New York and its agents, servants and/or employees, plaintiff's health was impaired, plaintiff suffered great mental distress, plaintiff was arrested as described hereinabove, plaintiff since suffers from recurring terrifying memories, nightmares, dreams, difficulty in concentrating, irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety , and large sums of money were expended by the plaintiff in defense of the offenses charged.

86). That by reason of the foregoing negligence, plaintiff is entitled compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against the defendant City of New York .

## AS AND FOR A SEVENTH CAUSE OF ACTION AS AGAINST ALL   DEFENDANTS FOR VIOLATION OF ARTICLE 1, SECTIONS 6, 11 AND 12 OF THE NEW YORK STATE CONSTITUTION.

87). Plaintiff repeats, reiterate and realleges each and every allegation contained in paragraphs 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

88). That by the aforementioned unlawful, deliberate, malicious, reckless, criminal misconduct, defendants violated Article l, Sections 6, ll and 12 of the New York State Constitution.

89). That the defendant City of New York directly or indirectly, under color of law and pursuant to official policy, procedure or custom, encouraged, condoned, approved and/or ratified the aforementioned unlawful, deliberate, malicious, reckless, criminal misconduct of the defendant police officer.

90). That the defendant City of New York is responsible and liable for the aforementioned unlawful, deliberate, malicious, reckless, criminal misconduct of the defendant police officer.

91). That the aforementioned unlawful, deliberate, malicious, reckless, criminal misconduct of the defendant police officer resulted in the plaintiff suffering loss of liberty as described hereinabove recurring terrifying memories, nightmares, dreams, difficulty in concentrating, irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety, and large sums of money were expended in defense of the offenses charged, deprivation of liberty without due process of law, punishment without due process of law,deprivation of due process of law, deprivation of the due process right to a fair and impartial New York City court proceedings, deprivation of the due process right to a fair institution of New York City court proceedings, deprivation of the due process right to justice and fair dealing in the institution and continuation of New York City court proceedings, deprivation of the due process right punitive court proceedings in New York City court founded upon proper and adequate evidence, deprivation of the due process right to be shielded from police, prosecutorial and investigatorial excesses and misconduct in violation of the law, deprivation of the due process right to a fair hearing/trial and violations of plaintiff's rights under Article l, Section 6, 11 and 12 of the New York State Constitution, and under the Constitution and laws of the United States , all of which are violations of clearly established laws.

92). That by reason of the foregoing intentional, unlawful, deliberate, malicious, reckless, criminal misconduct and deliberately indifferent misconduct, the plaintiff is entitled to recover compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against all defendants, and punitive and/or exemplary damages as a matter of law in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) and, if applicable, attorney fees as against the individual defendant police officer, and civilian co-defendant

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATIONS OF 42 U.S.C. 1983 (CIVIL RIGHTS DEPRIVATION)

93). Plaintiff repeats, reiterate and realleges each and every allegation contained in paragraphs 1 through 21, supra., with the same fore and effect as if hereinafter set forth at length.

94). That a result of the defendant police officer's fabrication of evidence and false accusation that plaintiff committed an offense , plaintiff was falsely arrested, falsely imprisoned, maliciously prosecuted, and plaintiff was subjected to abuse of lawful process, all of which deprived plaintiff of his 4th Amendment liberty interests, including the right to freedom of expression under the lest Amendment , in that the plaintiff was , under the conduct of the defendant police officer, had none of these rights, in violation of the statutory rights under 42 USC l983.

95). That as a result, the plaintiff was punished without due process of law in violation of rights under the lest, 4th, 5th, and 14th Amendments to the Constitution of the United States and in violation of statutory rights under 42 USC l983.

96). That the defendant police officer's fabrication of evidence and false accusation that plaintiff had committed an offense ,lead to plaintiff's false imprisonment, malicious prosecution, and abuse of process, all of which was perpetrated pursuant to and under color of law and pursuant to

official policy, procedure, regulation, and custom of defendant City of New York and its official agencies and bodies.

97). That acting under color of law and pursuant to official policy, regulation and custom defendant City of New York knowingly, intentionally, recklessly or, with deliberate indifference and callous disregard of the plaintiff's constitutional rights and statutory rights, failed to instruct, train, supervise, control, discipline and investigate the agent, servant and/or employee named as defendant in this complaint who is employed in the field of law enforcement and investigation, on a continuing basis to prevent said defendant, in the conduct of official duties from:

(l) acting without probable cause, to commit and cause an unlawful, warrantless , malicious and false arrest of the plaintiff, who was acting in accordance with constitution and statutory rights, privileges and immunities;

(2) acting without probable cause, to commit and cause an unlawful, malicious and false imprisonment of the plaintiff which resulted in an imprisonment, incarceration, detention and deprivation of liberty.

(3). acting without probable cause, to commit and cause an unlawful and malicious prosecution of plaintiff;

(4). committing perjury and offering false statements, falsified evidence, falsified reports, falsified official document, and suppressing evidence and acting in bad faith prior to and before all New York City court proceedings during the prosecution of the plaintiff;

(5). acting without probable cause, to commit and cause an unlawful, malicious and abuse of lawful process, and intentional infliction of emotional distress of the plaintiff, who was acting in accordance with constitutional; and statutory rights, privileges and immunities.

(6). acting without probable cause to punish the plaintiff without due process of law in violation of the plaintiff's liberty interests in violation of the lest, 4th, 5th, and l4th Amendments rights under the Constitution and other rights, privileges and immunities guaranteed to the plaintiff by the United States Constitution, the laws of the United States and the Constitution and laws of the State of New York .

98.). That defendant City of New York , under color of law and pursuant to official policy, procedure and custom, knowingly, intentionally, recklessly or with deliberate indifference and callous disregard of plaintiff's constitutional and statutory rights, did refuse, neglect or fail to supervise and investigate the activities of the above captioned defendant police officer.

99). That the refusal, neglect and failure by the defendant City of New York to supervise and investigate the activities of the above captioned defendant police officer, defendant City of New York allowed and permitted said defendant police officer to engage in the aforementioned misconduct.

l00). That defendant City of New York 's refusal, neglect and failure to supervise and investigate the activities of the above captioned defendant police officer directly led to plaintiff's deprivation of liberty without due process of law, punishment without due process of law, deprivation of due process of law, deprivation of the due process right to a fair and impartial hearing/trial, deprivation of the due process right to a fair institution of criminal proceedings, deprivation of the due process right to be shielded from police and investigatorial excesses and misconduct in violation of the law, deprivation of the right to carry and possess any commercial advertisement

without being subjected to police searches and seizures, arrest, and prosecution for same, suffered by the plaintiff and violations of the plaintiff's rights under the United States Constitution, 42 U.S.C. 1983 and other laws of the United States , and the Constitution and laws of the State of New York , all of which are violations of clearly established law.

101). That defendant City of New York knew and/or should have known and had reason or opportunity to know that the above captioned defendant police officer engaged in a course and/or pattern of such aforementioned misconduct, including perjury, falsified and suppressed evidence, and the deprivation of liberty without due process of law, deprivation of right to freedom of expression, punishment without due process of law, deprivation of due process of law, deprivation of the due process right to a fair and impartial hearing/trial, deprivation of the due process right to a fair institution of criminal proceedings, deprivation of the due process right to justice and fair dealing in the institution and continuation of criminal proceedings, deprivation of the due process right to be shielded from police and investigatorial excesses and misconduct in violation of the law, and deprivation of the due process right a fair hearing/trial suffered by the plaintiff and violations of the plaintiff's rights under the United States Constitution ,42 U.S.C. 1983 and other laws of the United States , and the Constitution and laws of the State of New York, all of which are violations of clearly established laws.

102). That the defendant City of New York directly or indirectly, under color of law and pursuant to official policy, procedure or custom, encouraged, condoned, approved and/or ratified the aforementioned unlawful, deliberate, malicious, reckless, criminal and wanton misconduct of the above captioned defendant police officer.

103). That the defendant City of New York is responsible and liable for the aforementioned unlawful, deliberate, malicious, reckless, criminal and wanton misconduct of the above captioned defendant police officer.

104). That the aforementioned unlawful, deliberate, malicious, reckless, criminal and wanton misconduct of the above captioned defendant police officer resulted in the plaintiff 's loss of liberty and incarceration , plaintiff since suffers from recurring terrifying memories, nightmares, dreams, difficulty in concentrating, irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety, expenditure of large sums of money in defense of offenses charged, deprivation of liberty without due process of law, punishment without due process, deprivation of due process of law, deprivation of the due process right to fair and impartial hearing/trial deprivation of the due process right to fair institution of criminal proceedings, deprivation of the due process right to justice and fair dealing in the institution and continuation of criminal proceedings, deprivation of the due process right to a criminal proceeding founded upon proper and adequate evidence, deprivation of the due process right to be shielded from police and investigatorial excesses and misconduct in violation of the law, deprivation of the due process to a fair hearing/trial and violations of the plaintiff's right under the United States Constitution, 42 U.S.C. 1983 and other laws of the United States , and the Constitution and laws of the State of New York , all of which are violations of clearly established laws.

105). That by reason of the foregoing intentional, unlawful, deliberate, malicious, reckless, criminal, wanton misconduct and deliberately indifferent conduct, plaintiff is entitled to recover

compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against all defendants, and punitive and/or exemplary damages as a matter of law in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) , and if applicable, attorney fees as against the individual defendant police officer.

## AS AND FOR A NINTH CAUSE OF ACTION AS AGAINST ALL DEFENDANTS FOR VIOLATION OF 42 USC 1981 & 1982 ( DISCRIMINATION AND PROPERTY RIGHTS)

106). Plaintiff repeats, reiterates and realleges each and every allegations contained in paragraph 1 through 21, supra., with the same force and effect as if hereinafter set forth at length.

107). That plaintiff , an African-American citizen was, at all times relevant hereto, engaged in a New York State/City protected activity.

108). That the aforementioned laws does permit any one to participate in Fair Housing, and to keep private property from becoming taken by government official without compensation.

109). That Title 42 USC 1981 protects plaintiff, and like persons, lawful contract from the official interference, acts of arrest, imprisonment, ticketing and prosecution. That plaintiff is a "qualified person" to participate lawful activity described and protected by these Federal Laws. in the City/State of New York .

110). That despite any qualification, the defendants have arrested, imprisonment plaintiff and have a history of doing same to persons of like race and/or their white associates found in accompany with individuals of individuals like plaintiff. In addition, in 100% of all cases identified and investigated by plaintiff and others liken plaintiff, the defendants have destroyed personal property of said persons, and refused, neglected or failed to provide the victims with a "Property Clerk Invoice" for the personal property so destroyed; each subjected to loss of property, ticketed, arrested, imprisoned, some fined and berated by employees of the New York City Police Department, including this defendant police officer.

111). That as a proximate and direct result of the acts/inactions of the defendants hereto, the plaintiff has been denied and deprived of the right to make, enforce contracts, be parties, give evidence before the state court proceedings, and to the full and equal benefits of all laws and proceedings for the security of persons as enjoyed by white citizens, and to be subject to like punishment, pains, penalties, taxes, license and exaction of every kind, and to no other when other individuals are permitted to participate in the benefits of the Equal Protection of the Laws.

111a). That all citizens of the United States do have the same rights, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. Furthermore, that the plaintiff has been denied, deprived and refused the protection under the federal laws regarding personal property by the actions taken by the defendants. In that, personal property was seized and destroyed by the defendant police officer, and at the acquiescence of the City of New York whereas the same type of property is never seized or destroyed in a white community, involving white individuals by police officers of the New York City Police Department.

112). That as a direct and proximate result of the action/inaction of the defendants , plaintiff since suffers recurring terrifying memories, nightmares, dreams, difficulty in concentrating, irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety, loss of liberty, personal property, expenditure of large sums of money in defense of the

15

offenses charged.

113). That by reason of the foregoing intentional, concerted, unlawful, malicious, deliberately discriminatory conduct, plaintiff is entitled to recover damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against all defendants, and punitive damages and/or exemplary damages as a matter of law in the sum of THREE MILLION DOLLARS ($300,000,000.00), and, if applicable, attorney fees as against the individual defendant police officer, and civilian co-defendant.

## AS AND FOR A TENTH CAUSE OF ACTION AS AGAINST ALL DEFENDANTS FOR CONSPIRACY WITH RACIAL ANIMUS

114). Plaintiff repeats, reiterates and realleges all of the allegations contained within paragraphs 1 through 21, supra., with the same force and effect as herein a set forth at length.

115). The individual police officer defendants hereto, under color of law, conspired with each other, and with others yet known, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten, and intimidate the plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the laws secured to him by the Constitution including the rights: to be free from the intentional and unreasonable searches and seizures; to associate and speak freely; to have access and seek redress in the courts; and to be free from false arrest, false imprisonment, and destruction of personal property which are noncontraband in nature.

116). That the police officer named herein was a willing participant in joint action with others including the remaining defendants hereto, and others yet to be identified, and acting under color of law.

117). It was part of the conspiracy the officer herein would search the neighborhoods and seek out and arrest, ticket and imprison in many instances, handcuff said person behind the back while in police custody, plus stole personal property from said person.

118). In furtherance of the conspiracy, and to conceal the crimes and misconduct of the named police officer(s) all of the defendant , with the exception of the municipality, engaged in a cover-up.

119). The conduct of the defendant was motivated by racial animus and the desire to injure, oppress, threaten, and intimidate plaintiff because of such person's race, and because of that individual's birthplace.

120). Defendants' racial and ethnic animus was clearly expressed by the acts, inaction, behavior, racial epithets and ethnically insulting remarks, and offensive touching directed at the plaintiff during and after the encounter(s) herein complained.

121). That the aforementioned unlawful, deliberate, reckless, criminal and wanton misconduct of the above captioned defendant police officer(s) resulted in the plaintiff's loss of liberty, and incarceration, plaintiff since suffers from recurring terrifying memories, nightmares, dreams, difficulty in concentrating, irritability, inability to function in common activities (work/hobbies), general tenseness and anxiety, expenditure of large sums of money in defense of offenses charged, deprivation of liberty without due process of law, punishment without due process of law; deprivation of due process of law; deprivation of the due process right to fair and impartial hearing/trial; deprivation of the due process right to fair institution of criminal/civil proceedings,

16

deprivation of the due process right to a criminal/civil proceeding founded upon proper and adequate evidence, deprivation of the due process right to be shielded from police and investigatorial excesses and misconduct in violation of the law, deprivation of the due process right to a fair hearing/trial and in complete disregard to the plaintiff's rights under the United States Constitution and laws of the State of New York, all of which are violations of clearly established laws.

122). That by reason of the foregoing intentional, unlawful, deliberate, malicious, reckless, criminal, wanton, misconduct and deliberately indifferent conduct, plaintiff is entitled to recover compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against the defendant police officers and punitive and/or exemplary damages in the amount of THREE HUNDRED MILLION DOLLARS ($300,000,000.00), and if applicable, attorney fees as against the defendant police officer.

## AS AND FOR A ELEVENTH CAUSE OF ACTION AS AGAINST THE ALL DEFENDANT FOR VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAWS

123). Plaintiff repeats, reiterates and realleges all of the allegations contained within paragraphs 1 through 21, supra., with the same force and effect as herein a set forth at length.

124). That this is an action brought under the NYS Human Rights Laws.

125). That the laws hereto provides Plaintiff with "an equal opportunity to enjoy a full and productive life." It addresses discrimination in employment, housing, and places of accommodation, and also provides protection in situations involving credit and in non-sectarian educational institutions.

126). That on the basis of age, race, national origins, gender, sexual orientation, disability, marital status, or military status, Plaintiff suffered from discrimination.

127). That by reason of the foregoing intentional, unlawful, deliberate, malicious, reckless, criminal, wanton, misconduct and deliberately indifferent conduct, plaintiff is entitled to recover compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against the defendant police officers and punitive and/or exemplary damages in the amount of THREE HUNDRED MILLION DOLLARS ($300,000,000.00), and if applicable, attorney fees as against the defendant police officer, and civilian co-defendant.

## AS AND FOR A TWELTH CAUSE OF ACTION AS AGAINST THE ALL DEFENDANT FOR VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAWS

128). Plaintiff repeats, reiterates and realleges all of the allegations contained within paragraphs 1 through 21, supra., with the same force and effect as herein a set forth at length.

129). That this is an action brought under the NYC Human Rights Laws.

130). The New York City Human Rights Law prohibits discrimination based on a person's race, color, religion, age, national origin, gender, sexual orientation, disability, marital status, partnership statues, or because the person is or is not a citizen

131). That on the basis of age, race, national origins, gender, sexual orientation, disability, marital status, or military status, Plaintiff suffered from discrimination.

132). That by reason of the foregoing intentional, unlawful, deliberate, malicious, reckless, criminal, wanton, misconduct and deliberately indifferent conduct, plaintiff is entitled to recover compensatory damages in the sum of THREE HUNDRED MILLION DOLLARS ($300,000,000.00) as against the defendant police officers and punitive and/or exemplary damages in the amount of THREE HUNDRED MILLION DOLLARS ($300,000,000.00), and if applicable, attorney fees as against the defendant police officer, and civilian co-defendant.

## RELIEF

**WHEREFORE,** plaintiff respectively demand judgment as follows:

A) Upon each Cause of Action above compensatory and punitive and/or exemplary damages as stated within each;

B). Attorney fees as applicable upon the entire case;

## JURY TRIAL DEMAND

Plaintiff demands a jury trial upon the case.

### DEFENDANTS ARE WARNED AGAINST VIOLATIONS OF THE LAWS BELOW. FEDERAL CRIMINAL COMPLAINT WILL BE SOUGHT FOR VIOLATION OF THESE LAWS

#### TITLE 18 U.S.C. § 1512. Tampering with a witness, victim, or an informant

a) (1)Whoever kills or attempts to kill another person, with intent to—

(A)prevent the attendance or testimony of any person in an official proceeding;

(B)prevent the production of a record, document, or other object, in an official proceeding; or

(C)prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(2)Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

(A)influence, delay, or prevent the testimony of any person in an official proceeding;

(B)cause or induce any person to—

(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(ii) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

(iii)evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(iv) be absent from an official proceeding to which that person has been summoned by legal process; or

(C)hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(3)The punishment for an offense under this subsection is—

(A)in the case of a killing, the punishment provided in sections 1111 and 1112;
(B)in the case of—
(i) an attempt to murder; or
(ii) the use or attempted use of physical force against any person; imprisonment for not more than *30 years;* and
(C)in the case of the *threat of use of physical force* against any person, imprisonment for not more than *20 years.*
(b)Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
(1)influence, delay, or prevent the testimony of any person in an official proceeding;
(2)cause or induce any person to—
(A)withhold testimony, or withhold a record, document, or other object, from an official proceeding;
(B)alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
(C)evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
(D)be absent from an official proceeding to which such person has been summoned by legal process; or
(3)*hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release,, parole, or release pending judicial proceedings;*
shall be fined under this title or imprisoned not more than *20 years*, or both.
(c)Whoever corruptly—
(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than *20 years*, or both.
(d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—
(1) attending or testifying in an official proceeding;
(2 )reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation  supervised release,, parole, or release pending judicial proceedings;
(3) arresting or seeking the arrest of another person in connection with a Federal offense; or
(4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;
or attempts to do so, shall be fined under this title or imprisoned not more than **3 years**, or both.
(e) In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.
(f)For the purposes of this section—
*(1) an official proceeding need not be pending or about to be instituted at the time of the offense; and*
(2)the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.
(g)In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance—
*(1)that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or*
*(2)that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal*

*Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.*

(h)There is extraterritorial Federal jurisdiction over an offense under this section.

(i)A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

(j)If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

(k)*Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.*

**TITLE 18 U.S.C § 1513. Retaliating against a witness, victim, or an informant**

a) (1) Whoever kills or attempts to kill another person with intent to retaliate against any person for—

(A) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

(B) providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings, shall be punished as provided in paragraph (2).

(2) The punishment for an offense under this subsection is—

(A) in the case of a killing, the punishment provided in sections 1111 and 1112; and

(B) in the case of an attempt, imprisonment for not more than 30 years.

(b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—

(1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

(2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer; or attempts to do so, shall be fined under this title or imprisoned not more than *20 years*, or both.

(c) If the retaliation occurred because of attendance at or testimony in a criminal case, the maximum term of imprisonment which may be imposed for the offense under this section shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

(d) There is extraterritorial Federal jurisdiction over an offense under this section.

(e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than *10 years*, or both.

(f) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

(g) A prosecution under this section may be brought in the district in which the official proceeding (whether pending, about to be instituted, or completed) was intended to be affected, or in which the conduct constituting the alleged offense occurred.

**TITLE 18 U.S.C § 1514. Civil action to restrain harassment of a**

**victim or witness**

(a)

(1) A United States district court, upon application of the attorney for the Government, shall issue a temporary restraining order prohibiting harassment of a victim or witness in a Federal criminal case if the court finds, from specific facts shown by affidavit or by verified complaint, that there are reasonable grounds to believe that harassment of an identified victim or witness in a Federal criminal case exists or that such order is necessary to prevent and restrain an offense under section 1512 of this title, other than an offense consisting of misleading conduct, or under section 1513 of this title.

(2)

(A) A temporary restraining order may be issued under this section without written or oral notice to the adverse party or such party's attorney in a civil action under this section if the court finds, upon written certification of facts by the attorney for the Government, that such notice should not be required and that there is a reasonable probability that the Government will prevail on the merits.

(B) A temporary restraining order issued without notice under this section shall be endorsed with the date and hour of issuance and be filed forthwith in the office of the clerk of the court issuing the order.

(C) A temporary restraining order issued under this section shall expire at such time, not to exceed 14 days from issuance, as the court directs; the court, for good cause shown before expiration of such order, may extend the expiration date of the order for up to 14 days or for such longer period agreed to by the adverse party.

(D) When a temporary restraining order is issued without notice, the motion for a protective order shall be set down for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character, and when such motion comes on for hearing, if the attorney for the Government does not proceed with the application for a protective order, the court shall dissolve the temporary restraining order.

(E) If on two days notice to the attorney for the Government, excluding intermediate weekends and holidays, or on such shorter notice as the court may prescribe, the adverse party appears and moves to dissolve or modify the temporary restraining order, the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

(F) A temporary restraining order shall set forth the reasons for the issuance of such order, be specific in terms, and describe in reasonable detail (and not by reference to the complaint or other document) the act or acts being restrained.

(b)

(1) A United States district court, upon motion of the attorney for the Government, shall issue a protective order prohibiting harassment of a victim or witness in a Federal criminal case if the court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case exists or that such order is necessary to prevent and restrain an offense under section 1512 of this title, other than an offense consisting of misleading conduct, or under section 1513 of this title.

(2) At the hearing referred to in paragraph (1) of this subsection, any adverse party named in the complaint shall have the right to present evidence and cross-examine witnesses.

(3) A protective order shall set forth the reasons for the issuance of such order, be specific in terms, describe in reasonable detail (and not by reference to the complaint or other document) the act or acts being restrained.

(4) The court shall set the duration of effect of the protective order for such period as the court determines necessary to prevent harassment of the victim or witness but in no case for a period in excess of three years from the date of such order's issuance. The attorney for the Government may, at any time within ninety days before the expiration of such order, apply for a new protective order under this section.

(c) As used in this section—

(1) the term "harassment" means a course of conduct directed at a specific person that—

(A) causes substantial emotional distress in such person; and

(B) serves no legitimate purpose; and

(2) the term "course of conduct" means a series of acts over a period of time, however short, indicating a continuity of purpose.

6/11/2012

RESPECTFULLY SUBMITTED,

/x/ C Vanterpool

CRISTOBAL    PRO-SE
VANTERPOOL
347. 458 9929